IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARDINAL HEALTH, INC.<br><br>    Petitioner,<br><br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>    Respondent. | No. 2-20-mc-00057-BMS |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY
RESPONSES FROM NATIONAL BOARD OF MEDICAL EXAMINERS**

    The National Board of Medical Examiners ("NBME") creates and administers the sole licensing exam for all would-be medical doctors in this country. In 2017, NBME agreed to change the exam's pain-management questions because they failed to adequately test whether aspiring doctors could prescribe opioids safely—that is, because the exam risked exacerbating the nation's opioid crisis. An external review by pain management experts revealed that the topics of prescription safety and misuse, as well as aspects of pain management and risk mitigation in opioid prescribing, were not tested well enough on the USMLE. NBME agreed and responded that those topics merited more emphasis on the USMLE. Now NBME wants to hide the questions it was forced to change. Those questions are a necessary part of understanding why America's doctors prescribed so many opioids, a phenomenon central to the cases that underlie this Motion—the first cases that will be tried in the landmark federal prescription opiate litigation. The stakes are too high to hide crucial evidence merely because it might embarrass NBME.

1

In an effort to avoid production of key information it alone possesses, NBME twists the facts to suggest that Petitioner has been dilatory and that the subpoena is overbroad. Not so. Petitioner promptly served NBME with a subpoena weeks after entry of a scheduling order in the underlying cases (the cases were stayed for years in the MDL before being remanded for trial).[1] Far from a "sweeping" subpoena, Petitioner has narrowed its requests to a pinpoint focus. After it became clear that NBME would not produce the targeted information absent court order, on May 15, 2020, Petitioner filed its motion to compel discovery responses from NBME (the "Motion") in this Court. Petitioner requested that the Court transfer the Motion to the court where the underlying litigation is pending—the Southern District of West Virginia—or, in the alternative, that the Court grant the Motion. On May 29, 2020, NBME opposed the Motion. Petitioner now seeks permission to briefly reply to address new matters raised by the Opposition and correct the record.[2]

## ARGUMENT

**I.     Exceptional Circumstances Warrant Transfer of the Motion to the Issuing Court and Would Not Burden NBME.**

NBME's arguments against transfer to the issuing court are meritless. At the outset, NBME incorrectly states—without authority—that Petitioner must meet a "*heavy burden*" to establish the existence of exceptional circumstances warranting transfer.[3] The very case that

---

[1] The underlying litigation was remanded from the federal MDL on January 14, 2020; the court entered a scheduling order on March 5, 2020; and Defendants issued the subpoena to NBME on March 27, 2020.

[2] Cardinal Health, Inc. will respond separately to NBME's cross-motion to quash Cardinal Health, Inc.'s Rule 30(b)(6) deposition subpoena.

[3] Memorandum In Opposition To Cardinal Health's Motion To Compel Production Of Documents By Non-Party NBME, And In Support Of NBME's Cross-Motion To Quash Cardinal Health's Rule 30(B)(6) Deposition Subpoena ("Opp'n") at 10.

NBME cites, however, provides that transfer is appropriate where "the interests favoring transfer outweigh the interests of the local nonparty served with the subpoena in obtaining a local resolution of the motion." *In re Novartis & Par Antitrust Litig.*, No. 2:19-MC-00149, 2019 WL 5722055, at *4 (E.D. Pa. Nov. 5, 2019). The balance of interests here clearly favors transfer for two reasons.

First, Petitioner has exceptionally strong interests in transfer. As NBME acknowledges, Petitioner asserted at least three distinct interests favoring transfer: (1) the history and complexity of the opioid litigation, (2) the involvement of a Special Master who has background knowledge and established discovery procedures to evaluate discovery issues under a tight schedule, and (3) the centrality of the relevancy dispute to this Motion. The central case that NBME cites in support of its opposition to transfer is inapposite. As that court recognized, (1) "transfer may be warranted 'in order to avoid disrupting the issuing court's management of the underlying litigation'" such as when "the same issues are likely to arise in discovery in many districts" in order to "ensure uniformity of result," and (2) "the court may also consider the complexity of the underlying litigation." *In re Novartis*, 2019 WL 5722055, at *4 (quoting Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013 amendments)). *Novartis* did not involve any of the three exceptional circumstances present here. First, it was not complex, unlike *United States of America ex rel. Simpson v. Bayer Corp.*, No. 16-207, 2016 WL 7239892 (E.D. Pa. Dec. 15, 2016), where transfer was granted because the underlying litigation lasted years and involved non-party subpoenas across the country. Second, there was no mention of a special master or discovery schedule, unlike *Meijer Inc. v. Ranbaxy Inc.*, No. 17-91, 2017 WL 2591937 (E.D. Pa. Jun. 15, 2017), where transfer was granted because the court issued a detailed scheduling order with many deadlines. Our case is more like *Bayer* and *Meijer* than *Novartis* because of its

complexity and rigorous discovery deadlines. Third, the non-party subpoena recipient in *Novartis* did not contest the relevance of the subpoenaed documents; it contested its control over the documents. *In re Novartis*, 2019 WL 5722055, at *5. There, the court found that the risk of disparate outcomes was minimal because the issue of "control" was specific to the non-party, meaning that it was entirely detached from the parties and could be resolved without context from the underlying litigation. *Id.* On the contrary, here, the risk of not transferring this Motion is that it could result in inconsistent treatment of third party subpoenas (and relevance determinations) in one of the country's most consequential civil litigations to date. These circumstances certainly qualify as exceptional.

Second, transfer will not burden NBME. NBME's burden argument does not hold up because nothing would require NBME to physically travel to West Virginia: the parties and issuing court are handling discovery disputes remotely by phone and email. So, the difference to NBME between litigating this issue in the Eastern District of Pennsylvania rather than the Southern District of West Virginia—practically speaking—is nil. NBME alleges hyperbolically that "[i]f transferred to the issuing court, NBME would be swept up like a pebble in a raging river of unrelated discovery disputes that apparently must be decided by June 12, the current deadline for document discovery."[4] The suggestion that transfer would unfairly burden or disadvantage NBME is incorrect. The issuing Court appointed a Special Master who has immersed himself in resolution of similar subpoena disputes—more than a dozen discovery motions are already pending before him—and is addressing such issues in an orderly fashion with briefing and regular telephonic conferences given the fast-approaching close of discovery. He is aware of the instant dispute and stands ready to address the issue upon transfer. NBME

---

[4] Opp'n at 11.

refers to the "West Virginia Lawsuit" to suggest that Petitioner is seeking discovery for a faraway case that has little to do with a Philadelphia-area entity like NBME.[5] But that is misleading. The underlying cases are two of the first remanded cases set for trial in a nationwide MDL of enormous consequence, which includes cases from Pennsylvania and nearly every other state in the country.

## II. If the Court Does Not Transfer the Motion, It Should Compel Production of Highly Relevant USMLE Test Materials Pursuant to the Subpoena and Protective Order.

### A. The USMLE Test Materials Are Relevant and Unique.

First, NBME misconstrues Petitioner's relevance argument: Petitioner is not arguing that the United States Medical Licensing Examination ("USMLE") *establishes* the standard of care for health professionals, but rather that it *reflects* it in a unique way, as the singular national licensing examination for all Medical Doctors in the country. NBME's argument that "the 'standard of care' referenced in the motion to compel has nothing to do with Cardinal"[6] is precisely why Petitioner needs *third-party discovery* regarding such alternative causes of Plaintiffs' alleged injury. Plaintiffs' allegations are against wholesale distributors, but no prescription opioid pill could reach a patient without a physician to prescribe it. How NBME tested would-be doctors on the use of opioids and treatment of pain when doctors prescribed more and more opioids is directly relevant to this case. NBME's suggestion that medical licensing exams are irrelevant to actual medical practice is curious for an organization that develops and administers "a standardized test designed to assess a medical school student's or medical school graduate's ability to apply the concepts, knowledge, and principles *necessary to*

---

[5] Opp'n at 13.

[6] Opp'n at 13.

5

*provide effective and safe patient care*."[7]  Understandably, NBME would rather avoid discovery into its role in the opioid crisis, but it is not for NBME to say what Petitioner needs or does not need to defend itself in this litigation.

Second, it is apparent from the limited set of documents NBME already produced that the USMLE's pain-management questions were deficient.  Multiple experts on pain management conducted reviews and concluded that the exam had to change because of the opioid crisis.  What is more: the USMLE Management Committee agreed with those conclusions and committed to broadening the exam's assessment of pain management.  NBME's complaint that "pain management' is a vague term[8] is belied by the fact that the USMLE Management Committee engaged with pain management experts, allowed them to conduct reviews of USMLE's identifiable pain management questions, and committed to implementing their recommendations, and NBME's own documents use the term "pain management" frequently.  NBME knows what "pain management" means, and Petitioner can provide a definition if necessary.  Thus, NBME's own files prove the link between the USMLE and the opioid crisis in America, which is the focus of this litigation.  For NBME now to pretend that the two things are unrelated is utterly disingenuous.

### B. The Protective Order Sufficiently Protects the Confidentiality of USMLE Test Materials.

It is commonplace for many types of entities to produce confidential and sensitive information under protective orders in civil litigation.  Often that information is much more

---

[7] Declaration Of Ken Ridgley In Support Of NBME's Opposition To Motion To Compel Production Of Documents By Non-Party NBME And NBME's Cross-Motion To Quash Rule 30(B)(6) Subpoena, at ¶ 3 [hereinafter "Ridgley Decl."] (emphasis added).

[8] Opp'n at 17.

sensitive than the test questions and related materials at issue here. To cite just a few of thousands of examples, courts have required the production, under protective orders, of the core source code for Skype;[9] of information pertaining to Guantanamo detainees, which was at the highest level of national security classification;[10] and of the secret formula for Coca-Cola.[11] As in those cases, the protective order here provides ample protection and limits use to this litigation only. Further, as discussed in meet and confers, the Petitioner is committed to working with NBME to protect questions from public disclosure during the upcoming bench trial.

        **C.    At Minimum, the Court Should Compel NBME To Produce Test Materials It No Longer Uses on the USMLE.**

NBME admits that it has "retired" USMLE test questions, which are not intended to be used on future USMLE exam forms.[12] Such questions often are disseminated to the public as samples or sold to medical schools for use in routine assessments.[13] Petitioner and NBME have discussed the possibility of production of three sub-categories of USMLE questions: (1) questions that have been retired from use on the USMLE due to age, obsolescence, or some other reason; (2) questions that were tested on the USMLE but not scored for psychometric or other reasons; and (3) questions that were previously disseminated to the public as samples. NBME

---

[9] *Net2Phone, Inc. v. eBay, Inc.*, *et al.*, 2:06-cv-02469-KSH-PS (D.N.J. Jan. 4, 2007) (Discovery Confidentiality Order on Informal Application) (Dkt. 39).

[10] *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004) (protective order for detainee-related material including sensitive compartmented information, a higher level of classification than top secret).

[11] *Coca-Cola Bottling of Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 289, 300 (requiring disclosure notwithstanding that "[t]he complete formula for Coca-Cola is one of the best-kept trade secrets in the world") (D. Del. 1985).

[12] Ridgley Decl., at ¶ 10.

[13] *Id.*

requests: "If the Court orders NBME to produce any questions to Cardinal, they should be limited to USMLE 'pain management' questions and answers that fall within one of these three sub-categories." There is no plausible claim that such "retired" USMLE test materials pose a risk to exam security, and NBME essentially admits as much.[14] While Petitioner welcomes production of these questions, which may have some evidentiary value, production of such questions is not a substitute for production of the test questions that appeared on the national exams each year. Lastly, NBME attempts to shrink the relevant timeframe to a five-year window from 2007 to 2012,[15] but that would completely defeat the purpose of this discovery. The key time periods are the late 1990's and early 2000's—when opioids began to be used regularly for treatment of chronic pain and opioid prescribing increased across the country—and from roughly 2012 to the present—when awareness of the opioid crisis led to evaluations and changes in how NBME tested issues related to pain management.

## III.  Conclusion

For the reasons set forth above, the Court should transfer this Motion to the issuing court in the Southern District of West Virginia, or in the alternative, grant Petitioner's Motion and order NBME to promptly produce USMLE test materials related to pain management.

Dated: June 10, 2020

*s/ Patricia Mulvoy Kipnis*
Patricia Mulvoy Kipnis
Bailey & Glasser LLP
923 Haddonfield Road, Suite 307
Cherry Hill, NJ 08002
Telephone: (856) 324-8219
pkipnis@baileyglasser.com

---

[14] *See* Opp'n at 22–23 ("Limiting disclosure of test questions to these three sub-categories will respect the security of questions that will be used on future USMLE exams…").

[15] NBME's brief states "(2017–2012)", but Petitioner believes it meant "(2007–2012)".

Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
***Counsel for Petitioner Cardinal Health, Inc.***